# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ALBERT TAYLOR, et al.,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**CITY OF JERSEY CITY, et al.,**<br><br>    **Defendants.** | Civ. No. 22-457 (KM) (JSA)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

The plaintiffs, Albert Taylor, Keylin Guzman, Brianna Guzman, and Shaquana Myrick, reside in an apartment building in Jersey City. They bring this action against the Hudson County Prosecutor's Office ("HCPO") and Hudson County Chief of Detectives Keith Stith (the "County defendants"), as well as the City of Jersey City and the City's Police Chief (the "City defendants"), as well as a number of John Doe defendants. The County allegedly obtained a search warrant that was inadvertently executed at the wrong residence in Jersey City. During the search, law enforcement officers detained the residents for an extended period, and plaintiffs allege excessive use of force, discrimination on the basis of race, and other misconduct. After realizing their mistake, the law enforcement officers released the apartment occupants, who later filed this action on behalf of themselves and their minor children. The Complaint asserts various constitutional, civil rights, and tort claims.

Now before the Court is the motion (DE 39) of the County defendants to dismiss the Second Amended Complaint (DE 36) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] For the following reasons, the County defendants' motion to dismiss is **GRANTED.**

---

[1]    A separate motion to dismiss, brought on behalf of the City defendants (DE 38), was separately briefed by both sides and will be the subject of a separate decision.

## I.   BACKGROUND[2]

Plaintiffs are African American residents of Jersey City, which is located in Hudson County. (SAC ¶¶ 8–12.) Keith Stith was the Chief of Detectives at HCPO, where he was responsible for implementing policies and practices for the training, discipline, and supervision of law enforcement officers. (*Id.* ¶ 17.) Plaintiffs bring claims against HCPO and Stith for violations of 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA"), and the Fourteenth Amendment, as well as for negligence, gross negligence, and *respondeat superior* liability. (*Id.* ¶¶ 130–56, 169–79, 187–94.)[3] These claims arise from an improperly executed search warrant. (*Id.* ¶ 1.)

On or about March 3, 2020, a member of the Narcotics Task Force at HCPO obtained a search warrant in connection with suspected drug activity for 170 Carteret Avenue, Floor 3. (*Id.* ¶¶ 81, 83.)[4] The warrant, which listed the name of a Hispanic woman, was executed by law enforcement officers on behalf of HCPO and Jersey City. (*Id.* ¶¶ 81, 84–85, 87.)[5]

At around 3:30 A.M., approximately eight to ten Caucasian and Hispanic officers "broke into" and "stormed" Plaintiffs' apartment. (*Id.* ¶¶ 87, 89–90.) The officers entered the premises without knocking, announcing themselves,

---

[2]   Certain citations to the record are abbreviated as follows:

DE = docket entry

SAC = Second Amended Complaint (DE 36)

Mot. = Defendants' Motion to Dismiss and Brief in Support (DE 39)

Opp. = Plaintiffs' Opposition to Defendants' Motion to Dismiss (DE 44)

Reply = Plaintiffs' Reply in Further Support of the Motion to Dismiss (DE 48)

[3]   Plaintiffs also bring these claims, and additional federal and state claims, against the other Defendants. (SAC ¶¶ 107–29, 157–68, 180–86.)

[4]   Plaintiffs allege that 170 Carteret Avenue was a multi-unit residence occupied solely by African American and Hispanic persons, and that "Defendants would have known or did know that the [residence] was in a working- or lower-class area and that it was occupied solely by non-Whites." (*Id.* ¶¶ 78–80.)

[5]   Plaintiffs allege that "Defendants knew no exigent circumstances existed and that there was no urgency in searching the [residence]." (*Id.* ¶ 82.)

identifying themselves, or advising Plaintiffs of their rights. (*Id.* ¶ 88.) The officers initially entered the children's room, where they yelled and told the children to show their hands. (*Id.* ¶ 91.) Meanwhile, the adults were roused from sleep, repeatedly told to "shut the fuck up," and instructed to place their hands behind their backs. (*Id.* ¶¶ 92–94.) The eldest child was also instructed to place her hands behind her back. (*Id.* ¶ 95.) The adults were ultimately handcuffed, and their complaints of pain from the tightness of the cuffs were ignored. (*Id.* ¶ 94.)

For the following three hours, the apartment was "ransacked." (*Id.* ¶ 101.) During this time, the officers brought a dog into the premises to find drugs. (*Id.* ¶ 102.) However, the officers did not inform Plaintiffs of the reason for their detention or the suspected drug activity. (*Id.* ¶ 97.) Nor did the officers ask Plaintiffs for their identities or for information about drugs. (*Id.* ¶¶ 96, 100.) Instead, the officers asked a Caucasian resident whether drugs were located at the apartment. (*Id.* ¶¶ 98–99.) The officers also failed to provide Plaintiffs with a copy of the warrant or a receipt of the items taken. (*Id.* ¶ 88.)

After the officers failed to find drugs at the premises, they demanded that Plaintiffs reveal the location of the woman who was actually listed on the warrant. (*Id.* ¶¶ 102-03.) Plaintiffs informed the officers that the woman lived on the floor above them. (*Id.* ¶¶ 86, 103.) The officers knocked politely at the woman's door and released Plaintiffs from their detention when the mix-up become apparent. (*Id.* ¶¶ 104-05.) As a result of the ordeal, Plaintiffs suffered physical and emotional injuries, including nerve damage from the tight hold of the handcuffs. (*Id.* ¶ 106.)

Plaintiffs allege that the improper execution of this search warrant was a manifestation of systemic problems. (*Id.* ¶¶ 73–77.) Specifically, Plaintiffs allege that HCPO maintained a "culture, policy, and/or procedure" under which it failed to verify the accuracy of search warrants or the propriety of the locations therein; failed to ascertain the identity of detainees or arrestees; subjected detainees and arrestees to excessive force; and subjected non-Caucasian adults

3

and children to unlawful actions on a discriminatory basis. (*Id.* ¶27.) According to Plaintiffs, Stith helped to establish this unlawful culture and policy around search warrants, detentions, and arrests, and Stith and others approved searches on the basis of race, allowed the detention of children, condoned the refusal to provide explanations to detainees, and ignored complaints of unlawful procedure. (*Id.* ¶¶ 28–31, 36, 38–40, 44.) Plaintiffs also assert that Stith failed to adopt or fund training programs to ensure compliance with the law. (*Id.* ¶¶ 34–35, 37, 41–42.)

On January 31, 2022, Plaintiffs filed this lawsuit against Jersey City, Chief of Police Michael Kelly, HCPO, Stith, and unknown law enforcement officers and entities. (DE 1.) Thereafter, Plaintiffs filed the First Amended Complaint on May 18, 2022 (DE 16) and the Second Amended Complaint on February 24, 2023 (SAC). On March 23, 2023, HCPO and Stith filed the current motion to dismiss this lawsuit, along with a brief in support. (Mot.) Plaintiffs filed an opposition on May 17, 2023 (Opp.), and HCPO and Stith filed a reply on June 5, 2023 (Reply).

## II.   STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move dismiss a complaint for failure to state a claim to relief. Fed. R. Civ. P. 12(b)(6). For purposes of the motion, the district court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). While the complaint need not contain detailed factual allegations, Fed. R. Civ. P. 8(a), it must contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint is facially plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "conclusory or bare-bones allegations will no longer survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).

Under Rule 12(b)(1), a party may move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where, as here, the motion attacks the complaint on its face, the district court must accept the alleged facts as true, as "the standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006). Subject matter jurisdiction exists in "civil actions arising under the Constitution, laws, or treaties of the United States (federal question jurisdiction) and civil actions between citizens of different states with the amount in controversy exceeding the sum or value of $75,000 (diversity jurisdiction)." *Rockefeller v. Comcast Corp.*, 424 Fed. Appx. 82, 83 (3d Cir. 2011). Notwithstanding the presence of federal questions or diversity, "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996).[6]

## III.  DISCUSSION

HCPO and Stith argue that the court lacks subject matter jurisdiction because they enjoy Eleventh Amendment sovereign immunity (Mot. at 16–18), and argue in the alternative that the complaint fails to state a claim to relief under federal and state law for three substantive reasons: § 1983 and the NJCRA do not cover HCPO or Stith (*id.* at 19–21); Plaintiffs do not allege personal involvement in constitutional violations (*id.* at 21–24); and New Jersey law forecloses state-law tort liability for negligence and gross negligence (*id.* at 24–26). In response, Plaintiffs dispute that Eleventh Amendment sovereign immunity covers the actions of HCPO and Stith (Opp. at 5) and assert that the Second Amended Complaint includes adequate allegations of personal

---

[6]      There is a wrinkle. The Third Circuit has written that because Eleventh Amendment immunity can be waived, it "does not implicate federal subject matter jurisdiction *in the ordinary sense*," and that therefore "a party asserting Eleventh Amendment immunity bears the burden of proving its applicability." *Christy v. Pa. Tpk. Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1995) (emphasis added).

involvement (*id.* at 6–7).[7] In their reply, HCPO and Stith contest both of those arguments. (Reply at 2–4.)

### A. Eleventh Amendment and sovereign immunity

Under the Eleventh Amendment, federal courts lack the power to hear suits that are "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Despite its facially limited wording, the Eleventh Amendment has been interpreted to confer more general "sovereign immunity" because it "imposes a jurisdictional bar against individuals bringing suit against a state or its agencies in federal court, or against a state official in his or her official capacity" in a suit for retrospective damages. *Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023).

Sovereign immunity, by its terms, applies to the States and "does not extend to counties and municipalities" in unlimited fashion. *Est. of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 857 (3d Cir. 2014). It does, however, "extend[]to entities that are considered arms of the state," *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007), a category which may include a county, or a county official sued in his or her official capacity.[8] In determining whether an entity is acting as an arm of a state, the court must consider "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001). Although the Third Circuit formerly gave primacy to

---

[7]     Plaintiffs' failure to respond to HCPO's and Stith's other arguments may constitute a waiver of opposition to the issued raised therein. *See, e.g., Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, No. 12-03375 WJM, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013). Nonetheless, for the sake of completeness, I have considered all the issues.

[8]     In this portion of the Opinion, Section III.A, I confine myself to official-capacity claims against Stith. Individual-capacity claims are discussed below at Section III.B.

the first factor, it now considers the three to be coequal. *See Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233, 239–40 (3d Cir. 2005).

Here, HCPO and Stith in his official capacity were acting as arms of the State of New Jersey and therefore partake of the State's sovereign immunity. I am not writing on a clean slate. It has been held, for example, that "county prosecutors, when pursuing their core functions, are entitled to Eleventh Amendment immunity," as the State is statutorily obligated to assume vicarious liability for them, the New Jersey Constitution establishes their office, and the State Attorney General has final authority over their core functions. *Est. of Bardzell v. Gomperts*, 515 F. Supp. 3d 256, 267–69 (D.N.J. 2021). Likewise, the New Jersey Supreme Court has extended Eleventh Amendment immunity to employees of county prosecutors in connection with the execution of search warrants. *Lavezzi v. State*, 97 A.3d 681, 683 (N.J. 2014). That same immunity extends to detectives within the prosecutor's office sued in their official capacities, as illustrated by a prior case in which Stith himself was a defendant:

> It is well settled that County Prosecutor's Office Detectives, when performing investigative functions, are agents of State and are entitled to sovereign immunity for all claims brought against them in their official capacities under both Section 1983 and the NJCRA. *See Beightler v. Office of Essex County Prosecutor,* 342 F. App'x 829, 832–33 (3d Cir.2009); *Coleman v. Kaye,* 87 F.3d 1491, 1500–02 (3d Cir.1996); *Pitman v. Ottehberg,* No. 10–2538, 2015 WL 179392, at *6 (D.N.J. Jan.14, 2015); *Wright v. State* 169 N.J. 422, 778 A.2d 443, 456–58 (2001); *In re Camden Police Cases,* Nos. 11–1315, 10–4757, 2011 WL 3651318, at *9 (D.N.J. Aug.18, 2011).

*Johnson v. Stith*, No. 14-5032, 2015 WL 4997413, at *4 (D.N.J. Aug. 20, 2015) (Arleo, J.); *see generally State v. Cnty. of Ocean*, 266 A.3d 433, 438 (N.J. Super. Ct. App. Div. 2021) (State's duty to defend and indemnify county prosecutor and detective under NJ Tort Claims Act). Therefore, to the extent HCPO and Stith in his official capacity are sued based on their alleged responsibility for

7

the execution of the search warrant, the Eleventh Amendment bars a retrospective claim for damages.[9]

It is true that Eleventh Amendment sovereign immunity is confined to suits for damages, and that federal courts retain the power to hear "suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002); *accord Durham*, 82 F.4th at 224 n.9. The Second Amended Complaint, however, neither "alleges an ongoing violation of federal law [nor] seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citations omitted); *see also Surina v. S. River Bd. of Educ.*, No. 20-2804, 2022 WL 264464, at *3 (3d Cir. Jan. 27, 2022) (finding that the injunctive exception to Eleventh Amendment immunity did not apply because "there were no alleged facts indicating that [certain] Defendants' purported violations of constitutional law were ongoing"). At most, Plaintiffs here offer a conclusory allegation that there are "ongoing Civil Rights violations," followed by a passing request for "injunctive relief." (SAC ¶ 142.) However, Plaintiffs do not allege any specific facts from which the Court might infer that there are ongoing civil rights violations, let alone violations affecting the Plaintiffs. Moreover, although the request for relief is "styled" as injunctive, Plaintiffs utterly fail to explain the scope or nature of the injunctive relief requested. *Blanciak*, 77 F.3d at 697–98 ("This Court must look to the substance rather than the form of the relief requested.").

I therefore dismiss the claims against HCPO and Stith in his official capacity on Eleventh Amendment grounds, pursuant to Rule 12(b)(1).

---

[9]      Even if HCPO's and Stith's involvement was based on policies, procedures, practices, or training, Eleventh Amendment immunity would remain in place. *See Hyatt v. Cnty. of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009) ("Training and policy decisions that require legal knowledge and discretion are related to prosecutorial functions and are unlike administrative tasks[.]"). In any event, dismissal is warranted because Plaintiffs fail to state a claim against HCPO and Stith. (*See* Section III.B, *infra*.)

## B. Failure to State a Claim for Relief

The Eleventh Amendment does not preclude suits for damages brought against state officials in their individual capacities, even if the challenged conduct was a part of their official responsibilities. *Hafer v. Melo,* 502 U.S. 21, 31 (1991). I therefore proceed to consider non-jurisdictional bases for the motion to dismiss under Rule 12(b)(6), with particular focus on the individual-capacity claims against Stith. Finding that no cause of action is stated, I dismiss any remaining claims against Stith and HCPO pursuant to Rule 12(b)(6).

### 1. Civil rights claims

First, there is a non-jurisdictional, statutory-construction basis to dismiss the civil rights claims against Stith his official capacity,[10] on grounds closely parallel to, but distinct from, the Eleventh Amendment analysis above. Stith in his official capacity and HCPO are not "persons" within the meaning of § 1983 or the NJCRA. The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," and it has extended this holding to "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). "The same is true under [NJCRA], which mirrors the language of § 1983." *Gonzalez v. N.J. Dep't of Children & Families*, 545 F. Supp. 3d 178, 202 (D.N.J. 2021). For the same reasons that Stith and HCPO act as arms of New Jersey for purposes of sovereign immunity, they are not considered "persons" within the meaning of these federal or state civil rights statutes. So, for reasons similar to those expressed in Section III.A, *supra,* the Second Amended Complaint must be dismissed against Stith in his official capacity and HCPO for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).[11]

---

[10]   As well as HCPO, should jurisdiction be found.

[11]   *See also Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 548 (D.N.J. 2013) ("[T]he NJCRA is construed nearly identically to Section 1983."); *Coles v. Carlini,*

Second, I consider a defect which is fatal to the individual-capacity civil rights claims against Stith: failure to allege personal involvement. Vicarious liability is not authorized by § 1983 or the NJCRA. *See Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012). Rather, "personal involvement" in the alleged violation is required. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

The Second Amended Complaint lacks any such allegation against Stith or HCPO. It does not allege that Stith was one of the officers who executed the warrant. Rather, it parrots the relevant legal standard, alleging generally that Stith (and HCPO) failed to implement adequate training and perpetuated unlawful culture, policies, procedures, and practices. However, it contains no specific facts that illustrate such wrongful conduct, let alone these two defendants' participation, knowledge, or acquiescence in such constitutional or civil rights violations.[12]

The civil rights claims are therefore dismissed for failure to state a claim.

### 2. State-law torts

Finally, the tort claims must be dismissed because HCPO and Stith cannot be held liable for negligence or gross negligence consistent with New Jersey law. Under the Tort Claims Act, "a public entity is not liable for an

---

162 F. Supp. 3d 380, 404 (D.N.J. 2015) (citations omitted) ("[C]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983."); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) ("This district has repeatedly interpreted NJCRA analogously to § 1983."). This issue, although closely parallel to the Eleventh Amendment analysis, is distinct; it is properly analyzed as a dismissal for failure to state a claim, pursuant to Rule 12(b)(6).

[12]     As against the Jersey City codefendants, the Second Amended Complaint alleges excessive force, racial disparities, and lack of accountability among City police. (SAC ¶¶ 45–72.) Such allegations, whatever their merits, do not raise a plausible inference of violations of § 1983 or the NJCRA by Hudson County prosecutors or investigators.

10

injury," N.J.S.A. § 59:2-1(a), including "an injury resulting from an act or omission of a public employee where the public employee is not liable," N.J.S.A. § 59:2-2(b). The Tort Claims Act further stipulates that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law," N.J.S.A. § 59:3-3, but that he may be liable "if his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct," N.J.S.A. § 59:3-14. So even if Stith's actions rose to the level of negligence or gross negligence, the claims would still fail because there is no plausible factual allegation that his conduct fell outside the scope of his employment or that it constituted willful misconduct. *See Alston v. City of Camden*, 773 A.2d 693, 701–02 (N.J. 2001) (holding that willful misconduct is "much more than mere negligence," and that a trial court may instruct a jury that the standard is above "gross negligence"). More specifically, the Second Amended Complaint contains no specific factual content to suggest that these County defendants, Stith and HCPO, played any direct role in the allegedly tortious conduct in connection with the execution of the warrant.

The tort claims, too, must be dismissed on the additional basis of failure to state a claim.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED** as to defendants Stith and HCPO only. A separate order will issue.

Dated: October 24, 2023

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**

11